IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MACENZI MARIE MECHLING, )
)
      Plaintiff, )
)
    v. ) Civil Action No. 17-531
)
NANCY A. BERRYHILL, )
ACTING COMMISSIONER OF )
SOCIAL SECURITY, )
)
      Defendant. )

O R D E R

AND NOW, this 12th day of July, 2018, upon consideration of the parties' cross-motions for summary judgment, the Court, upon review of the Commissioner of Social Security's final decision denying Plaintiff's claim for Disability Insurance Benefits under Subchapter II of the Social Security Act, 42 U.S.C. § 401, et seq., and denying Plaintiff's claim for supplemental security income benefits under Subchapter XVI of the Social Security Act, 42 U.S.C. § 1381, et seq., finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms. See 42 U.S.C. § 405(g); Jesurum v. Secretary of U.S. Department of Health & Human Services, 48 F.3d 114, 117 (3d Cir. 1995); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., 507 U.S. 924 (1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). See also Berry v. Sullivan, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence, nor reverse, merely because it

would have decided the claim differently) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)). See also Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986).[1]

---

[1] Plaintiff asserts numerous ways in which she alleges that the Administrative Law Judge ("ALJ") erred in finding her to be not disabled under the Social Security Act, none of which warrant remand of this matter. Instead, the Court finds that substantial evidence supports the ALJ's decision.

Plaintiff's first argument is that the ALJ incorrectly found at Step Three of the sequential process that Plaintiff's severe impairment of borderline intellectual functioning does not meet or equal the listing for intellectual disability at Section 12.05 of the regulations. See 20 C.F.R., Pt. 404, Subpt. P, Appx. 1, § 12.05. While the exact nature of Plaintiff's argument is not entirely clear, the Court, in any event, finds that the ALJ properly determined that Plaintiff's condition did not meet or equal Listing 12.05 and that substantial evidence supports that decision.

The Court first notes that Listing 12.05 was revised significantly effective January 17, 2017. See Revised Medical Criteria for Evaluating Mental Disorders, 81 F.R. 66138-01, 2016 WL 5341732 (Sept. 26, 2016). The revised Listing 12.05 significantly alters the criteria for meeting the listing. However, this Court will review the ALJ's decision using the rules in effect at the time the decision was issued. See id. at 66138 n.1. Accordingly, the Court will, as the ALJ did, apply the prior version of the listing.

At the time of the ALJ's decision, Listing 12.05 provided in pertinent part:

> 12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

20 C.F.R., Pt. 404, Subpt. P, Appx. 1, § 12.05. Plaintiff asserts that her impairments meet subsections C and D, which require, respectively:

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following
>
> > 1. Marked restriction of activities of daily living; or

2

> 2. Marked difficulties in maintaining social functioning; or
>
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
>
> 4. Repeated episodes of decompensation, each of extended duration.

Id. Therefore, the version of Listing 12.05C effective at the time of the ALJ's decision required a claimant to have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. The applicable regulations only require that one of the three IQ scores be in the 60 through 70 range. See 20 C.F.R., Pt. 404, Subpt. P, Appx. 1, § 12.00D.6.c; Markle v. Barnhart, 324 F.3d 182, 186 (3d Cir. 2003). The second prong of 12.05C is satisfied by a finding that the "other" impairment is "severe" within the meaning of Step Two of the sequential evaluation process. Markle, 324 F.3d at 188; 65 F.R. 50746, 2000 WL 1173632, at 50772 (Aug. 21, 2000). Similarly, the relevant version of Listing 12.05D requires the same valid verbal, performance, or full scale IQ of 60 through 70, with the additional requirement of the condition resulting in at least two of the four listed criteria commonly used throughout Section 12.00 of the listings.

Plaintiff appears to claim that she indeed had the qualifying IQ scores and met the additional criteria of subsections C and D of the listing, but that the ALJ improperly rejected her scores. That is not the case. Although the ALJ did question the validity of Plainitff's IQ scores based on her documented irritation while taking the test (R. 25-26, 604-05), he did assume the validity of the scores, finding that Plaintiff could arguably establish the requisite IQ scores of 60-70. (R. 17). He further found that Plaintiff had several "other" severe impairments. (R. 14-15, 17). Accordingly, the ALJ at least assumed that Plaintiff could meet the criteria of subsection C. He went on, however, to find that Plaintiff did not meet the introductory criteria of prior Listing 12.05 requiring "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." (R. 17-18).

In order for a claimant's impairment to meet a listing, it must satisfy *all* of the specified criteria of the listing at issue. See Sullivan v. Zebley, 493 U.S. 521, 530 (1990); 20 C.F.R. §§ 404.1525(d), 416.925(d). At the time of the ALJ's decision, *in addition to* the criteria of at least one of the A through D provisions, the claimant *also* was required to meet the introductory criteria of Listing 12.05. The requirement that the claimant meet the introductory criteria to Listing 12.05 clearly and unequivocally was stated in the explanatory notes to the pre-revision mental disorder listings. See 20 C.F.R., Pt. 404, Subpt. P, Appx. 1, § 12.00A (if claimant's impairment satisfies diagnostic description in introductory paragraph and any one of the four sets of criteria in A through D, the impairment meets Listing 12.05). See also Gist v. Barnhart, 67 Fed. Appx. 78, 81 (3d Cir. 2003) (holding that "[a]s is true in regard to any 12.05 listing, before demonstrating the specific requirements of Listing 12.05C, a claimant must show proof of a 'deficit in adaptive functioning' with an initial onset prior to age 22"); Cortes v. Comm'r of Soc. Sec., 255 Fed. Appx. 646, 651 (3d Cir. 2007) (to meet Listing 12.05, the claimant must prove, *inter alia*, "'subaverage general intellectual functioning with deficits in adaptive functioning'

3

manifesting before age 22"). Cf. Illig v. Comm'r of Soc. Sec., 570 Fed. Appx. 262, 266 n. 9 (3d Cir. 2014) ("We will assume without deciding that showing deficits in adaptive functioning is a fourth requirement of Listing 12.05C.").

The regulations in effect at the time the ALJ issued his decision did not define "deficits of adaptive functioning," nor did they identify guidelines by which to assess the existence or severity of a claimant's alleged deficits. See Logan v. Astrue, 2008 WL 4279820, at *8 (W.D. Pa., Sept. 16, 2008). However, the Social Security Administration ("SSA") previously issued a regulation entitled Technical Revisions to Medical Criteria for Determinations of Disability, 67 F.R. 20018-01, 2002 WL 661740 (April 24, 2002), to provide guidance on the matter. In that regulation, the SSA recognized that each of the four leading professional mental health organizations in the United States that deal with intellectual disabilities defines "deficits in adaptive functioning" in a slightly different manner. See Logan, 2008 WL 4279820, at *8. These various definitions all require significant deficits in intellectual functioning, but differ as to the age of onset and the method of measuring the required deficits in adaptive functioning. See id. The SSA clarified that it did not seek to endorse the methodology of one professional organization over another, and would allow use of any of the measurement methods endorsed by one of the professional organizations. See id. In order to assess a claimant's alleged intellectual disability to determine if deficits in adaptive functioning exist, the regulation directed that an ALJ should consult either the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (5th ed., American Psychiatric Ass'n 2013) ("DSM-V"), the standard set forth by the American Association on Intellectual and Developmental Disabilities or the criteria of the other major mental health organizations. See id.

Here, the ALJ expressly indicated that he consulted the DSM-V in determining whether Plaintiff demonstrated the requisite deficits in adaptive functioning to meet Listing 12.05. (R. 17). As the ALJ discussed, the APA's DSM-V defines deficits in adaptive functioning as "how well a person meets community standards of personal independence and social responsibility, in comparison to others of similar age and sociocultural background." DSM-V at 37. Such deficits "limit functioning in one or more activities of daily life, such as communication, social participation, and independent living, across multiple environments, such as home, school, work, and community." Id. at 33. Adaptive functioning involves reasoning in three domains: conceptual, social, and practical. See id. at 37. The requisite deficits are present when at least one of these three domains of adaptive functioning is sufficiently impaired that ongoing support is needed in order for the person to perform adequately in one or more life settings at school, at work, at home, or in the community. See id. at 38. The ALJ proceeded to engage in an extensive evaluation of the facts of the case under these standards.

Plaintiff does not clearly indicate how she believes that the ALJ erred during this process. She does not contend that his reliance on the DSM-V was improper, nor does she contest his application of the standards set forth therein. She does vaguely allude to other evidence that presumably suggests that she did have the required level of deficits of adaptive functioning, but she does not actually address the ALJ's comprehensive discussion of the issue at all. Having reviewed the ALJ's discussion, the Court agrees with him that Plaintiff has not met the threshold requirement regarding deficits in adaptive functioning for Listing 12.05C and D. (Moreover, as

4

discussed further below, the ALJ found that Plaintiff did not meet the requirements of subsection D in any event, disagreeing with the findings of Lindsey A. Groves, Psy.D.).

The Court is cognizant of the confusion that can sometimes accompany the analysis required under the previous version of Listing 12.05 and notes that the ALJ in this case did an admirable job in conducting such analysis. His discussion is thorough and well-reasoned, and the Court finds that substantial evidence supports his findings.

Plaintiff next argues that the ALJ, both in finding that she did not meet a listing at Step Three and in formulating her residual functional capacity ("RFC") at Steps Four and Five, failed properly to evaluate the medical opinion evidence, especially the opinions of Dr. Groves, Wendy Kaufer, D.O., and Tammy Fronzaglia, Ph.D. As the Court finds the ALJ's consideration of all of the opinion evidence, including that provided by Drs. Groves, Kaufer, and Fronzaglia, to be particularly thorough and well-supported, it finds no merit in Plaintiff's argument.

It is axiomatic that when assessing a claimant's application for benefits, the opinion of the claimant's treating physician generally is to be afforded significant weight. See Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001); Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). In fact, the regulations in effect at the relevant time provide that a treating physician's opinion is to be given "controlling weight" so long as the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); Fargnoli, 247 F.3d at 43; Plummer, 186 F.3d at 429. As a result, the ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, and not on the basis of the ALJ's own judgment or speculation, although he may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided. See Plummer, 186 F.3d at 429. However, it is also important to remember that:

> The ALJ -- not treating or examining physicians or State agency consultants -- must make the ultimate disability and RFC determinations. Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, "[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity[.]" Brown v. Astrue, 649 F.3d 193, 197 n. 2 (3d Cir.2011). State agent opinions merit significant consideration as well.

Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011) (internal citations omitted in part).

In regard to Dr. Groves' opinion, the ALJ pointed out that Dr. Groves had merely seen Plaintiff once at the behest of her attorney, and explained in exacting detail why her opinion from this one-time evaluation was based primarily on Plaintiff's self-reported symptoms, showed no evidence of any awareness of Plaintiff's other medical records, and was inconsistent with the

5

other record evidence. (R. 26-27). He gave similarly comprehensive treatment to the opinion of Dr. Kaufer, who was a consulting rather than a treating physician. (R. 23, 375). The ALJ explained at length why the physical limitations to which Dr. Kaufer opined were inconsistent not only with the other medical evidence, but with the results of Dr. Kaufer's own examination of Plaintiff. (R. 23-24). Further, in regard to the main area of disagreement between the ALJ and Dr. Kaufer, Plaintiff's ability to use her left arm, the Court notes that the vocational expert ("VE") testified that Plaintiff could perform the representative jobs even with *no* use of her left arm. (R. 64). The ALJ provided a comparable analysis as to Dr. Fronzaglia's opinion. (R. 26). The ALJ, in fact, thoroughly discussed all of the medical evidence and opinion evidence, and substantial evidence supports his findings in regard thereto.

Finally, Plaintiff argues that two of the representative jobs which the VE found her to be able to perform were incompatible with her functional capacity. There does appear to be some confusion in the record regarding one of these two positions, the hand packer position, as the VE provided a code under the Dictionary of Occupational Titles ("DOT") that does not correspond to that position. The Court need not address this discrepancy, though, since, as discussed below, it finds that the VE and the ALJ set forth two jobs that Plaintiff could perform and that would establish that she could perform substantial work existing in the national economy.

Plaintiff takes no issue with the ALJ's finding that she could perform one of the three representative jobs provided by the VE – the document preparer position. She does, however, contend that she would be unable to perform the remaining job, that of surveillance system monitor, because that position requires a "reasoning level" of 3 under the DOT. "The DOT is a vocational dictionary that lists and defines all jobs available in the national economy and specifies what qualifications are needed to perform each job." McHerrin v. Astrue, 2010 WL 3516433, at *3 (E.D. Pa. Aug. 31, 2010) (citing S.S.R. 00-4p, 2000 WL 1898704 (Dec. 4, 2000)). Among other qualifications, jobs are assigned a General Educational Development level, which includes a reasoning level from 1 to 6. Jobs with a reasoning level of 3 require that an employee "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and] [d]eal with problems involving several concrete variables in or from standardized situations." DOT, App. C, § III.

Here, after considering Plaintiff's RFC, the VE testified that Plaintiff could perform, *inter alia*, the surveillance system monitor position identified as DOT 379.367-010. (R. 63). Plaintiff argues, though, that this position has a reasoning level of 3, which she contends is incompatible with her mental and emotional limitations, including her limitations as to concentration, persistence, and pace, and her restriction to simple, routine tasks. However, while Plaintiff cites to case law from other Circuits in support of her position (case law that is distinguishable in any event), the Third Circuit has expressly declined to find that there is a per se conflict between a reasoning level of 3 and a limitation to simple, routine tasks and unskilled work. See Zirnsak v. Colvin, 777 F.3d 607, 618 (3d Cir. 2014). Instead, the Circuit Court explained that remand is not necessary in such cases where the ALJ discharged his or her duty to ask the VE whether his or her testimony was consistent with the DOT on the record and where the following factors were met: (1) the claimant did not seriously argue an inability to perform the jobs in question and the record supports a finding that he or she can perform such work; (2) the claimant did not point out

the conflict at the hearing; and (3) the challenged jobs were only representative examples. See id. at 618-619.

The situation here is much the same as in Zirnsak. First, the ALJ expressly instructed the VE to tell him if any part of his testimony was inconsistent with the DOT, and the VE did not express any inconsistency. (R. 61-62). Further, here, as in Zirnsak, Plaintiff has made no real argument other than in very broad terms as to why she could not perform the work of a surveillance system monitor, and, as discussed herein, the ALJ addressed the medical evidence and its impact on Plaintiff's functional limitations at great length. Moreover, Plaintiff did not raise any inconsistencies at the hearing. Finally, the surveillance system monitor position offered by the VE was offered as one of several examples of jobs Plaintiff could perform. (R. 63-64). Accordingly, there is no basis for remanding the case based on this argument. See also Brush v. Colvin, 2015 WL 3866078 (M.D. Pa. June 23, 2015). The Court further notes that, although the Commissioner does bear the burden of demonstrating that the claimant can perform jobs existing in the national economy at the fifth step of the sequential analysis, see Zirnsak, 777 F.3d at 616, this burden is satisfied if the ALJ identifies at least one occupation with a significant number of jobs in the national economy that the claimant can perform. See Wilkinson v. Comm'r of Soc. Sec., 558 Fed. Appx. 254, 256 (3d Cir. 2014) (citing 20 C.F.R. §§ 404.1566(b), 416.966(b)). Accordingly, the document preparer position alone would satisfy the Commissioner's burden at Step Five. Nonetheless, as discussed, here there are at least two representative positions that Plaintiff could perform.

Plaintiff briefly asserts that her RFC did not adequately address Plaintiff's moderate limitations in regard to concentration, persistence, and pace, pursuant to Ramirez v. Barnhart, 372 F.3d 546 (3d Cir. 2004), and Burns v. Barnhart, 312 F.3d 113 (3d Cir. 2002). However, in Ramirez and Burns, the ALJ had limited the claimant merely to simple, repetitive one or two-step tasks to account for the claimant's limitations. Here, the mental limitations found by the ALJ in the RFC were more extensive and specific. The ALJ found that Plaintiff is:

> limited to understanding, remembering, and carrying out simple instructions and performing simple, routine tasks, such as those akin to the work requirements of jobs with a special vocational preparation level of two or below. [She is] limited to only occasional and superficial interaction with the general public. [She] can occasionally interact with coworkers on a superficial level. [She] is limited to occasional supervision. She is able to function in low stress work environments, which means no production rate pace work, but rather, goal-oriented work with only occasional and routine changes in work setting. Routine changes are defined as those that do not require alteration of work method.

(R. 20). These limitations went far beyond a limitation to simple, repetitive one or two-step tasks or "unskilled work" and properly accounted for Plaintiff's deficiencies in concentration, persistence, and pace. Indeed, in finding, at Step Three of the sequential analysis, that Plaintiff

7

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (document No. 9) is DENIED and Defendant's Motion for Summary Judgment (document No. 11) is GRANTED.

                                                                    s/Alan N. Bloch
                                                                    United States District Judge

ecf:        Counsel of record

---

had moderate limitations in concentration, persistence, and pace, the ALJ stated that his Step Three analysis was not an RFC assessment and that the RFC assessment at Steps Four and Five required a more detailed assessment by itemizing various functions contained in the broader categories employed at Step Three. (R. 20). This demonstrates that the ALJ did not fail to address Plaintiff's issues regarding concentration, persistence, and pace, but rather dealt with them in a more specific manner at Steps Four and Five.

Accordingly, for all of the reasons set forth herein, the Court finds no merit in Plaintiff's various arguments and finds, instead, that substantial evidence supports the ALJ's findings. Therefore, the Court affirms.